## E. J. SPENCER ET AL. v. CITY OF PALESTINE.

### Decided March 11, 1909.

**1.—Forfeit—Contract—City Ordinance.**

Where a city ordinance granting a franchise to construct, operate and maintain a street railway system, provided that a sum of money should be placed in the hands of the mayor to be forfeited to the city if the grantees failed to "commence the work of building said railway system within sixty days from the date of acceptance of the franchise," and the evidence, in a suit by the grantees to recover the deposit, left no doubt that it was the intention of the parties to the contract that the grantees should demonstrate their good faith in undertaking the construction of the railway by some visible showing of actual work in the physical construction of the system, the placing of six poles along one street on the day before the expiration of the sixty days for the purpose of demonstrating the work, was not a commencement of the work within the meaning of the contract, but clearly an attempt to prevent a forfeiture by subterfuge; and an instruction to the effect that the sum was forfeited to the city was authorized.

**2.—Forfeiture—Franchise—City Ordinance.**

Where an ordinance granting franchises for a street railway and a light and power plant, prescribed conditions under which the rights should be forfeited, but contained no provisions for forfeiture by the city, the rights thereby conferred became vested on acceptance by the grantees, and could only be declared forfeited by a court of competent jurisdiction in a suit for that purpose; and, for that reason, an attempted forfeiture by the city council did not destroy the franchise or give an action by the grantees against the city for the value of the franchises.

**3.—Damages—City—Attempt to Revoke Franchise.**

Where the grantees of a franchise sought to recover damages for an attempt on the part of the city council to revoke the franchise by resolution, casting a cloud upon it, but no evidence was offered to show what the damage was, the court properly instructed a verdict for the city on that claim.

**4.—Evidence—Contract—Conclusion—Intention.**

Where the ordinance granting a franchise for a street railway provided for a forfeiture in case the grantee failed to commence work of construction within sixty days from the date of acceptance, testimony of the grantee that it was not the intention of the city council that the physical work of building the railway was to commence within such period, was a conclusion and inadmissible.

**5.—Same.**

The fact that the members of the city council knew at the time the ordinance was passed that the rails for the construction of the railway could not be procured within the sixty days, was immaterial, since the actual work of building the system could have been commenced before the rails were received; and there was no error in excluding testimony as to such fact.

**6.—Charge—Instructing a Verdict—Conflict of Evidence—Findings.**

In determining whether an instruction to return a verdict for a party is error, no issue of fact upon which there was a conflict in the evidence should be found in favor of the defendant.

Appeal from the District Court of Anderson County. Tried below before Hon. B. H. Gardner.

*Campbell & Sewell* and *Rollin W. Rogers,* for appellants.—In a suit against a municipal corporation to recover damages on a contract and franchise granted by said corporation to plaintiffs for the building and construction of a street railway system, and to recover a sum of money deposited with said city under the terms of said contract and franchise, ·which provided that the grantees—plaintiffs—should deposit with said city the sum of $1,000, conditioned that they "would commence the work of building said railway system within sixty days from the date of acceptance of the terms of this franchise, and will complete said railway system within eighteen months from said date, and that in the event of failure to do so the said sum of $1,000 shall be forfeited to the said city as liquidated damages," and where there is evidence to show that time is not of the essence of the contract, and it is shown that the city, the grantors—defendants—attempted to rescind its action granting said franchise and denied the grantee—plaintiff—the right to complete the construction of said railway system, and prohibited them from doing so, and by their acts destroyed the value of said franchises to plaintiffs, an issue of fact is clearly raised as to plaintiff's right to recover the $1,000 deposited and damages for the destruction of the value of said franchises, and plaintiffs are entitled to have said issue of fact passed upon by the jury. Denison Ry. Co. v. St. Louis S. W. Ry. Co., 72 S. W., 201; Todd v. Caldwell, 10 Texas, 243; Sanborn v. Murphy, 86 Texas, 442; Railway Co. v. Brownsville, 45 Texas, 96.

When, in a suit for damages against a city on a contract and franchise granted by said city, for its unlawful and wrongful acts in destroying the value of said franchise to the grantee, the undisputed evidence clearly makes it an issue of fact as to whether or not appellants had complied with the terms of the contract and franchise granted them by appellee, up to the time the ordinances granting said franchises were rescinded by appellee, all the facts and surround-

ing circumstances may be looked to in order to arrive at the true meaning and intention of the parties as explained in the words used in the contract and to determine said issue of fact. It is error for the court to take such issue of fact from the jury and to instruct a verdict for defendant. Ft. Worth Ry. Co. v. Rosedale Ry. Co., 68 Texas, 181; Dwyer v. City of Brenham, 70 Texas, 32; Heirs of Watrous v. McKie, 54 Texas, 71; Smith v. Crosby, 47 Texas, 129; Wright v. Dobie, 22 S. W., 66.

*Jno. Young Gooch,* for appellee.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellants, E. J. Spencer and J. S. Tritle, against appellee to recover two-thirds of $5,000, the alleged value of three franchises granted by the City of Palestine to appellants and R. A. Gray on January 12, 1903, and which, it is alleged, were thereafter forfeited by appellee, and also to recover two-thirds of $1,000 placed in the hands of appellee by appellants and said Gray, as a guaranty for the performance by them of the obligations imposed upon them by their acceptance of said franchise grants, and the further sum of $379.25 alleged to have been expended by appellants on the faith of said franchise grant prior to the wrongful forfeiture of said grants by appellee.

The defendant answered by a general and various special exceptions, and by general denial, and special plea setting up facts showing the right of the City of Palestine to declare the franchise forfeited.

The cause was tried by a jury and, under peremptory instruction by the court, a verdict was returned in favor of defendant and judgment was rendered in accordance therewith.

The facts disclosed by the record are as follows: The three ordinances granting franchises to appellants were passed by the city council of the City of Palestine January 12, 1903. Ordinance No. 1 granted to appellants the right to erect and maintain an electric lighting and power system in said city for a period of fifty years. This ordinance contained a provision "that the same shall become null and void in the event the grantees therein (appellants) failed to accept from the city a franchise for the construction of a street railway." Ordinance No. 2 granted to appellants the right to construct, operate and maintain a street railway system over, along and upon the public streets of said city, to erect poles, etc., necessary for the successful operation of said street railway system. Section 12 of ordinance No. 2 provides that "the same shall be available to the grantees therein, their lessees, associates, successors and assigns, provided the same shall be accepted by the said J. S. Tritle and R. A. Gray upon the passage and approval of the ordinance, and they shall deposit with the mayor of said city, or whomsoever he may designate, the sum of one thousand dollars, conditioned that the said grantees, their lessees, associates, successors or assigns, will commence the work of building said railway system within sixty days from the acceptance of this franchise, and will complete said railway system within eighteen months from said date, and in the event of failure to do so, the said one thousand dollars shall be forfeited to the City of Palestine as liquidated

damages, but in the event the said grantees, their lessees, associates, successors or assigns fulfill all the terms of this franchise, then the said one thousand dollars shall be returned to them." Ordinance No. 3 granted to appellants the right to construct, maintain, extend and operate a system of works in the City of Palestine for the purpose of distributing gas with which to furnish power, heat and light to said city and its inhabitants for a period of fifty years. The ordinance was conditioned that it became null and void in the event the grantees failed to accept a franchise from the city for the construction of a street railway, or if they failed to commence and complete the construction of a street railway in accordance with the provisions of a franchise granted by the city.

These franchises were accepted by appellants and Gray, and the $1,000 required to be deposited under ordinance No. 2 was placed in the hands of the mayor under the conditions imposed by said ordinance. After the acceptance of the franchises appellants at once began to prepare for the construction of the street railway. They prepared a map of the city, looked over the ground with a view of locating the tracks of the railway, and ascertained and decided upon the kind of machinery to be purchased; drew up specifications, and sent some out to secure bids on the electric machinery, rails, engines, dynamos, and all other apparatus necessary for the construction of said railway system, and formulated all the details of the project; secured articles of incorporation of the Palestine Traction Company and the Palestine Light & Power Company; paid the first year's franchise tax to the State; had stock books printed for said two corporations, and had in process of formation the necessary mortgages on the basis of which to issue bonds; actually let the contract for electric light and railway machinery for the carrying out of the terms of said ordinances, and after correspondence covering a period up to March 20, 1903, received a final contract from the General Electric Company for the electric machinery necessary for the power-house, to be shipped to Palestine on or before November 1, 1903, the amount of the contract being $18,000, and the weight of said machinery purchased thereunder being 46,000 pounds, which contract was signed by appellants on March 11, 1903, and approved by the Western manager of the General Electric Company on March 18, 1903, same having previously received the signature of the St. Louis agent. It was also shown that November 1, 1903, was the earliest date deliveries of the machinery could be secured. Appellants further let contract to Carnegie Steel Company for 400 tons of "T" rail, the character provided for in the contract, to be used in the construction of said railway system, and for the purpose of complying with said ordinance No. 2, and on March 10, 1903, gave them instructions to ship same, giving the route, to them at Palestine, Texas; that contract was in writing. Negotiations were entered into by appellants, with various manufacturers, for the purchase of boilers, feed pumps, etc., and they had prepared a full set of specifications and drawings covering all the apparatus in connection therewith. It was absolutely essential to secure the proposals for the purchase of the machinery and to take the time that was taken by appellants to the consideration of the adoption of the machinery to

the fuel, etc., and that every detail be considered by the engineer before he could intelligently plan a power house. Appellants were compelled to take the rails that they had contracted for and, after the adoption of the resolutions by appellee canceling their franchises, were compelled to sell said rails so purchased; appellants, with the assistance of the St. Louis agent of the General Electric Company, sold the machinery contracted for from it. They were bound to receive and did receive the machinery purchased under their contracts, which was intended to be used in carrying out the terms of their franchise. Appellants secured charter from the State of Texas for Palestine Light & Power Company on the faith of said ordinances, and paid the State an incorporation fee of $125, the date of incorporation being January 17, 1903, and also secured charter from the State for the Palestine Traction Company, and paid a charter fee thereon of $155, and paid franchise tax of $30 on said corporations, all of which was done within sixty days as called for in ordinance No. 2, and within said time set up six poles along the street in front of the depot. At the time these franchises were granted, appellants were financially in a position to carry out their undertaking as alleged in their petition.

On April 13, 1903, the city council passed a resolution declaring the $1,000 deposited by appellants, under ordinance No. 2 above mentioned, forfeited to the city, and directing the mayor to place said money in the city treasury, and further declaring that all of the rights and franchises granted by said three ordinances before mentioned had been forfeited and were by said resolution "revoked and held of no further force or effect." It was shown that the street railway could have been completed within six months after the material therefor had been received, and appellants testified that it would have been completed within eighteen months as required by the ordinance of the city had it not passed the resolution revoking said ordinance.

Appellant Spencer testified that he and his associates before named would have made $5,000 by financing the construction of the plant, and that, therefore, the franchises granted by the ordinances were worth that amount. It was further shown that appellants expended $379.25 in charter fees and taxes and for cost of preparing plans for the construction of the plant and procuring contracts for materials. It was shown that the six poles placed along one of the streets of the city were not of the character nor in the position necessary and proper to support the wires to be used in conveying the electric current by which the cars were to be propelled. Appellant Spencer testified that these polls were placed along the street for the purpose of "demonstrating the work." He further testified that before the commencement of actual construction of a street railway system certain preliminaries must be worked out. That the procuring of maps is a preliminary; that the making of profiles is preliminary; that the survey of the road is preliminary; that you might say everything is preliminary until you put a spade into the ground and, when asked as an expert the question, "Is it not as much a preliminary to order the machinery as it is to get a profile?" he answered, "Absolutely; the stuff must be on the ground before you can begin the actual construction on the ground." It was shown that the city understood at the time the franchises were

granted that the rails for the track of the railway company could not be procured within sixty days from the time the franchise was granted.

The first assignment of error complains of the action of the trial court in instructing a verdict for the defendant. We do not think the court erred in giving this instruction. Under the plain and unambiguous terms of the contract between the parties, as evidenced by the ordinance granting the franchise, the $1,000 placed in the hands of the mayor was to be forfeited to the city if the appellants failed to "commence the work of building said railway system within sixty days from the date of acceptance of the terms of this franchise." It can not be said that the preparations made by appellants for carrying out the contract, as shown in our fact conclusions before set out, was a commencement of "the work of building the railway," as that term is used in the ordinance granting the franchise. The evidence leaves no room for doubt that it was the intention of the parties to the contract that the appellants should demonstrate their good faith in undertaking the construction of the street railway by some visible showing of actual work in the physical construction of the system. That such was the understanding of the appellants is shown by the fact that on the day before the expiration of the sixty days they placed six pine poles along one of the streets of the city for the purpose, as stated by appellant Spencer, of "demonstrating the work." We think it clear that the placing of these poles was not a sufficient compliance with the terms of the contract, to prevent a forfeiture of the $1,000. The evidence shows that they were small pine poles worth about $1.50 apiece, and if they could be used at all in the construction of the railway they were not placed in the proper position. The placing of these poles under these circumstances could not be considered a commencement of the work of building the street railway, but was plainly an attempt on the part of appellants to prevent a forfeiture by subterfuge. We think the evidence required the court to instruct the jury that appellants were not entitled to recover any portion of the $1,000.

The ordinance granting the franchises for the Electric Light & Power Plant and for the street railway contained no provision for forfeiture by the city, and having been accepted by appellants the rights thereby conferred became vested and could only be declared forfeited by a court of competent jurisdiction in a suit brought for that purpose. It follows that the attempted forfeiture by the city council has not destroyed the franchise rights of appellants and they can not recover the value of such franchises, even if it be conceded that the evidence is sufficient to show such value.

The petition contains allegations to the effect that the passage of the resolution revoking the rights granted by said ordinances greatly damaged the franchises granted appellants by casting a cloud upon them, but there is no evidence showing what this damage was, and if the petition can be considered sufficient to entitle appellants to recover for damages sustained by reason of the attempted forfeiture of the franchises by the city council, there was no evidence from which the jury could have found such damage, and therefore the court properly instructed a verdict for the appellee upon this claim.

The second assignment of error complains of the ruling of the trial court in sustaining objections made by the defendant to certain evidence offered by appellants. This evidence consisted of the testimony of appellant Spencer of conversations between himself and members of the city council before the passage of the ordinances granting the franchises, as to the time in which the work of building the street railway could be completed and the impossibility of his being able to get the rails for the railway track within sixty days, and the conclusion of the witness from these conversations that there was "no understanding or intention on the part of the council or myself that the physical work of putting in a plant should be done on the ground within sixty days." There was no error in refusing to admit this testimony. The conclusion of the witness that it was not the intention of the city council that the physical work of building the railway was to be commenced within sixty days from the acceptance of the franchises by appellants was clearly not admissible, and the fact that the members of the city council knew at the time the ordinance was passed that the rails for the construction of the railway could not be procured in sixty days, was immaterial, since the actual work of building the system could have been commenced before the receipt of the rails.

We are of the opinion that the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*

### ON MOTION TO CORRECT FINDINGS OF FACT.

In our fact conclusion in the opinion heretofore filed in this cause we say: "It was shown that the six poles placed along one of the streets of the city were not of the character nor in the position necessary and proper to support the wire to be used in conveying the electric current by which the cars were to be propelled. There is evidence to support this finding, but such evidence is contradicted by evidence offered by appellants from which the jury might have found that these poles were placed in proper position for permanent use as a part of the railway system, and were suitable for this purpose.

The court having instructed a verdict for the defendant, in determining whether such instruction was error no fact issue upon which there was a conflict in the evidence should be found in favor of the defendant, and in deciding the question presented on this appeal the testimony of appellants to the effect that the six poles were suitable for permanent use in the proposed system, and were placed in proper position for such use, must be regarded as true. We do not regard the matter as important, but appellants are entitled to this correction of our fact findings, and to this extent their motion is sustained. In all other respects the motion is refused.

Associate Justice McMeans did not sit in this case.

*Granted in part and refused in part,*